**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG DIVISION**

**JONATHAN FREDERICK BENNETT,**

    **Petitioner-Defendant,**

**v.**                                                                         **Civil Action No. 3:11-cv-103
(Judge Bailey)**

**UNITED STATES OF AMERICA,**

    **Respondent-Plaintiff.**

**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE
RECOMMENDING THAT THE DISTRICT COURT DISMISS PETITIONER'S
MOTION FOR RETURN OF PROPERTY PURSUANT TO FED. R. CRIM. P. 41(g)**

**I. INTRODUCTION**

On November 22, 2011, Petitioner-Defendant Jonathan Frederick Bennett ("Petitioner"), proceeding *pro se*, filed a Motion for Return of Property ("Motion"). (Criminal Action No. 3:11-cr-24, ECF No. 46; Civil Action No. 3:11-cv-103, ECF No. 1 ("Mot.").) On November 23, 2011, the Honorable John Preston Bailey, Chief United States District Judge, entered an Order directing the Clerk of the Court to open a separate civil action using Petitioner's Motion as the initiating petition. (Criminal Action No. 3:11-cr-24, ECF No. 47.) On December 28, 2011, the undersigned granted Petitioner permission to proceed *in forma pauperis* (ECF No. 13)[1], and Petitioner paid his initial partial filing fee on February 9, 2012 (ECF No. 17).

On February 13, 2012, the undersigned entered an Order directing Respondent-Plaintiff, the United States of America ("Government") to respond to Petitioner's Motion within twenty-eight (28) days of the entry of the Order. (ECF No. 21.) The Government responded to Petitioner's

---

[1] All docket numbers from here forward refer to filings in Civil Action No 3:11-cv-103.

Motion on March 12, 2012 ("Response"). (ECF No. 23 ("Resp.").) On March 16, 2012, the undersigned entered an Order directing the Government to supplement its Response to Petitioner's Motion within fourteen (14) days of the entry of the Order. (ECF No. 24.) The Government filed its supplemental response on March 19, 2012 ("Supplemental Response"). (ECF No. 25 ("Supp. Resp.").) The undersigned Magistrate Judge now issues this Report and Recommendation on the Motion without holding an evidentiary hearing.

## II.  FACTUAL BACKGROUND

On April 5, 2011, the Grand Jury, sitting in Martinsburg, charged Petitioner with two counts of distribution of cocaine base, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and one count of possession with the intent to distribute heroin and cocaine hydrochloride, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). (Indictment, Criminal Action 3:11-cr-24, ECF No. 1.) On May 26, 2011, Petitioner signed a plea agreement in which he agreed to plead guilty to Count Two of the Indictment charging him with distribution of .5 grams of cocaine base. (Plea Agreement, Criminal Action No. 3:11-cr-24, ECF No. 22.) On June 3, 2011, Petitioner appeared to enter his guilty plea in open court. (Change of Plea Order, Criminal Action No. 3:11-cr-24, ECF No. 25.) On October 18, 2011, Chief Judge Bailey sentenced Petitioner to a term of 30 months incarceration followed by a six-year term of supervised release. (Judgment in a Criminal Case, Criminal Action No. 3:11-cr-24, ECF No. 44.)

According to the Government's version of the offense contained in Petitioner's Pre-Sentence Report, on February 19, 201, Trooper Schuessler of the West Virginia State Police received an anonymous tip that narcotics were being sold out of Room 258 of the Rodeway Inn in Martinsburg, West Virginia. (Pre-Sentence Report at 4, Criminal Action No. 3:11-cr-24, ECF No. 43.) A female

then approached Trooper Schuessler and advised her that she was with a man she knew as "Water" at the Rodeway Inn. (*Id.*) The female advised that she had found a large plastic bag full of drugs inside Water's duffle bag. (*Id.*) Trooper Schuessler and other state police officers conducted a search of Room 258 after receiving the female's consent to search. (*Id.* at 5.) No drugs were found inside the duffle bag, but a bag containing suspected cocaine base, a bag containing suspected heroin, and a bag containing suspected Xanax and $300 were found in the bedside stand. (*Id.*)

After the search, the female gave the officers a description of Water, who was later identified as Petitioner, and told them that he had gone to the Brickhouse Bar in Martinsburg and was driving a red Dodge Magnum. (*Id.*) Officers set up surveillance near the Brickhouse Bar and observed the only red Dodge Magnum in the parking lot. (*Id.*) They observed a man matching Petitioner's description leave the bar and get into the Magnum. (*Id.*) During surveillance, Trooper Schuessler observed Petitioner get out of the Magnum and approach a white female while holding a white plastic bag. (*Id.*) Officers took Petitioner into custody, and a search of his person revealed a key to Room 258 of the Rodeway Inn and $2,330. (*Id.*)

### III. CONTENTIONS OF THE PARTIES

*A. Petitioner's Motion*

As noted above, Petitioner seeks the return of $2,330 seized from his person on February 19, 2011 by the West Virginia State Police. (Mot. at 2.) Petitioner alleges that this money was illegally seized because the police did not have probable cause to execute the search and seizure. (*Id.*) Petitioner also alleges that the Government entrapped him by inducing him to commit the crime on February 19, 2011 and that he did not have any predisposition to engage in criminal activity. (*Id.* at 2-3.) Finally, Petitioner argues that even though state authorities seized the money, the

Government either has actual possession of the money because it was released to federal authorities or constructive possession because it "was considered evidence in the federal prosecution." (*Id.* at 3.)

## B. *Government's Response*

In its Response, the Government asserts that the money seized was forfeited by the State of West Virginia in a civil forfeiture proceeding and that this Court does not have the authority to address that forfeiture under the doctrine of prior exclusive jurisdiction. (Resp. at 2.) In other words, the Government states that the "United States cannot now reach in and return property of which it never had control in the first place." (*Id.* at 3.) Instead of filing his instant Motion, the Government asserts, Petitioner's proper remedy would have been to appeal the Order entered by the Circuit Court of Berkeley County. (*Id.*)

In its Supplemental Response, the Government again asserts that the $2,300 was forfeited to the State of West Virginia pursuant to state law and that it was never part of the federal case against Petitioner. (Supp. Resp. at 2.) The Government has also attached, as Exhibit One, a copy of the Order of Judgment for the forfeiture matter which was entered by the Honorable Christopher C. Wilkes of the Circuit Court of Berkeley County, West Virginia. (*Id.*, Ex. 1 ("Order of Judgment").)

## IV. <u>ANALYSIS</u>

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g). Here, Petitioner moves for the return of the $2,330 seized from his person

when he was arrested outside of the Brickhouse Bar on February 19, 2011. (Mot. at 2.) First, Petitioner must demonstrate that he is entitled to this property. "A claimant . . . must prove only a right to lawful possession of the property and an equitable right to its return, and no presumptions exist in favor of the government." *United States v. Clymore*, 245 F.3d 1195, 1201 (10th Cir. 2001). For the purposes of this motion, the Court will assume that Petitioner has a lawful entitlement to the currency seized from his person.

"'Rule 41([g]) is an equitable remedy, . . . available to [the movant] only if he can show irreparable harm and an inadequate remedy at law." *United States v. Copeman*, 458 F.3d 1070, 1071 (10th Cir. 2006) (quoting *Clymore v. United States*, 164 F.3d 569, 571 (10th Cir. 1999)). Assuming that Petitioner is the owner of the $2,330, he may be able to demonstrate irreparable harm because the money was forfeited to the State of West Virginia. (*See* Order of Judgment.) However, Petitioner is unable to demonstrate an inadequate remedy at law because he had the ability to petition the Circuit Court of Berkeley County for the return of his property. "[T]here is no question of fact that the United States does not have jurisdiction over it. The [property] was forfeited in a . . . state proceeding, . . . divesting this court of any jurisdiction or ability to grant [a] remedy under Rule 41." *United States v. Story*, 170 F. Supp. 2d 863, 867 (D. Minn. 2001).

Furthermore, the Government cannot return property it does not possess, and therefore a motion for the return of property must be denied if the Government does not have possession of the sought-after property. *See United States v. Solis*, 108 F.3d 722, 723 (7th Cir. 1997); *United States v. White*, 718 F.2d 260, 262 (8th Cir. 1983); *Glover v. United States*, No. CR505-020, 2008 WL 4533928, at *1 (S.D. Ga. Oct. 8, 2008). Here, the Order of Judgment states that the $2,330 taken from Petitioner's person was seized pursuant to a search conducted by officers of the West Virginia

State Police and Berkeley County Sheriff's Department. (Order of Judgment, ¶¶ 4-6, 22-34.) Nothing in the Order of Judgment suggests that the Government ever had possession of this currency. Therefore, it appears that this Court is not the proper jurisdiction for Petitioner to petition for the return of his state-forfeited property.

There are some limited circumstances, however, where Rule 41(g) can be used to petition for the return of property seized by state authorities. "Those circumstances include actual federal possession of the property forfeited by the state, constructive federal possession where the property was considered evidence in the federal prosecution, or instances where property was seized by state officials acting at the direction of federal authorities in an agency capacity." *Clymore*, 164 F.3d at 571 (citations omitted). As discussed above, the Government never had actual possession of the $2,330. Therefore, Petitioner's only remaining theory is constructive possession.

As noted above, one instance of constructive possession is when the property "was considered evidence in the federal prosecution." *Clymore*, 164 F.3d at 571. However, the Government did not use the $2,330 as evidence against Petitioner because Petitioner chose to plead guilty and forego his right to a jury trial. Therefore, the only remaining possibility is that the state officials were "acting at the direction of federal authorities in an agency capacity." *Id.* In the instant case, as noted above, officers from the West Virginia State Police and Berkeley County Sheriff's Department conducted the search leading to the seizure of the $2,330 from Petitioner's person. (Order of Judgment, ¶¶ 4-6, 23-34.) The seized money was then "turned over to the Eastern Panhandle Drug and Violent Crimes Task Force." (*Id.*, ¶ 40.) Therefore, the state officials were not acting at the direction of federal authorities. However, even if federal authorities had controlled the investigation, this would still be insufficient to establish constructive possession. An "assertion that

federal authorities controlled the ongoing investigation and were 'involved' in the seizures, without more, is insufficient to establish the extensive federal possession or control necessary to make Rule 41(e)[2] the appropriate vehicle by which to recover the state-forfeited property." *Clymore*, 164 F.3d at 571; *see also United States v. Eaton*, 62 F. App'x 281, 283, 2003 WL 1772721, at *2 (10th Cir. Apr. 3, 2003); *Miller v. Reno*, 208 F.3d 214, 2000 WL 302786, at *1 (6th Cir. Mar. 17, 2000); *United States v. Rowzer*, 201 F.R.D. 516, 518-19 (D. Kan. 2001).

Here, Petitioner's case resembles *Eaton* and *Clymore*, where the federal authorities never had actual possession of the claimed property seized by the state and where the claimed property was never used as evidence at trial. Furthermore, like in *Rowzer*, the fact that the Government and not the State of West Virginia pursued drug distribution charges against Petitioner "does not suffice to confer jurisdiction here." *Rowzer*, 201 F.R.D. at 518 ("The United States may have took over the federal prosecution for the firearms violations, but there is no indication that the United States ever constructively possessed these other listed items, i.e., considered them to be evidence in the federal prosecution or otherwise obtained or exercised any power or control over them.") Therefore, the undersigned finds that Petitioner's Motion for Return of Property must fail because the Government lacked actual or constructive possession of the state-forfeited currency and because Petitioner had an adequate remedy at law in the Circuit Court of Berkeley County, West Virginia.

## V. RECOMMENDATION

For the reasons stated herein, the undersigned recommends that Petitioner's Motion for Return of Property (Civil Action No. 3:11-cv-103, ECF No. 1) be **DENIED** and **DISMISSED**

---

[2] In 1999, a Motion for Return of Property fell under Fed. R. Crim. P. 41(e) as opposed to the current statute, Fed. R. Crim. P. 41(g). *See* Fed. R. Crim. P. 41 (1999).

**WITH PREJUDICE** because the claimed $2,330 was forfeited by the State of West Virginia and was never part of Petitioner's federal case.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, Chief United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Jonathan Frederick Bennett.

**DATED:** April 13, 2012

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE